15-1073 Matthew Cook and Irene Cook, Plaintiff of Colossus v. Andrew Gallos, Defendant of Kelly v. Ardrey-Wongahed, Defendant of Colossus, Attorney Mr. Elizabeth Wakeman, Ardrey-Wongahed, Defendant of Kelly, Attorney Mr. Jason Zaitchik. Ms. Wakeman. Thank you. Good morning. Good morning. May it please the Court, Counsel. My name is Elizabeth Felt-Wakeman. I represent Matthew and Irene Cook. We are appealing today a motion denying a motion to reconsider by Judge Thomas Meyer in the McHenry County 22nd Judicial Circuit Court on September 30, 2014. That motion to reconsider related back to a July 9, 2014, ruling in which he granted summary judgment to the defense following briefing schedule and oral arguments. The facts of this case are that on July 17, 2009, Matthew Cook had gone to his wife's parents' home to do some painting and repairing of a ceiling that pointed, the vaulted ceiling, about 18 to 20 feet above the ground. When he arrived at the home at 6 o'clock in the morning, his father-in-law had already set up two little giant ladders. They were extended actually beyond their safe point of extension, and there was a wooden plank on top of those two ladders that was not secured. Counsel, if I could interrupt. I think we're familiar with the facts, and I had a question regarding another issue in the case, if I may. In essence, doesn't your position come down to you're using the fall itself to demonstrate that somehow, somewhere there was negligence here? In other words, how is an accident the equivalent of an allegation of negligence? I'm using the fall plus the circumstantial evidence of the plank not being attached to the ladders. The labels on the ladders that said do not extend, don't go above this level, and the fact that the testimony was that the system collapsed. The scaffold system was intended and set up to hold Mr. Cook, and it didn't do that. Let's say the plank was not attached to the ladder, but didn't Matthew testify he didn't know what caused the fall? What he said was that everything collapsed. He doesn't know why everything collapsed, but everything collapsed. Did you proceed on the legal theory of res ipsa loquitur? No, I did not. But you still have to prove what the cause of the fall was? Right, and the cause was the negligence of Mr. Gallos in not securing that plank, putting the plank at a level higher than when it's supposed to stand on the ladders, and- Well, didn't Matthew say nothing wobbled, there was no shaking, there was no wobbling? Didn't he testify to that? What his testimony was was that everything collapsed, so- But what caused it to collapse? Did he testify as to what he thought was the cause of the collapse? No, but I don't think that you can punish a person for not having a recollection when he sustained a head injury as a result of that fall. There are cases of falls in typically grocery stores where the person who's fallen and injured themselves do not recover because they cannot testify as to why they fell. And your client failed to testify why he fell short of the laws of gravity. And Justice Zenoff asked it, and your response was it was because the plank wasn't at a height, I think you said- It was too high for the- It was too high. But how do you know it was too high if you don't know what caused the accident? So let me step back with respect to the grocery store falls, for example. In those cases, the plaintiffs testified they did not know what caused them to fall. For example, there was a milky substance close to where they fell that was undisturbed. So they can't prove that that's what made them fall because it was undisturbed and it was close to their fall but not at the site of their fall. In this case, Mr. Cook testified he was on the ladder and it collapsed, and hence he was injured. So if the scaffolding system had been safely constructed, if the plank had been down a level and if it had been secured, then Mr. Cook would have probably been in a safer position, and he was in that unsafe position because of the conduct and the acts and the failure to act by Mr. Gallows. You seem to be saying so many words. I understand your position is, look, something had to go wrong or he wouldn't have fallen. But let me just read a passage from this case, Strutts v. Vicerre, V-I-C-E-R-E, that says, the mere occurrence of an accident does not support an inference of negligence. And absent affirmative proof of proximate causation, a plaintiff cannot carry his or her burden of establishing the existence of a genuine issue, a material fact sufficient to defeat a summary judgment motion. You seem to be saying the mere fact something went wrong and he fell supports an inference of negligence in the absence of any specific testimony as to what the fall was based on. And that's the missing element. I'm combining it with the circumstantial evidence of the plank being on the ground and the ladders being on their sides at the place where he fell. How do we know that when he fell, he didn't knock something over with his fall, as opposed to the ladder collapsing first and being the cause of his fall? There's no testimony, no evidence with respect to that. I think that's the part that's for the jury to decide, because the plaintiff doesn't have to prove that at the summary judgment stage. And if I go back to distinguishing the Streps case, with the Streps case, it was a gentleman with health issues fell downstairs, but there was nothing that indicated what was wrong with the stairs. In this case, we do know that there were things wrong with the scaffolding system, so that's a very different situation. And that, again, was what? That the plank was not secured, the plank was set at too high of a level, and the ladder was extended beyond where it was supposed to be extended. If you say the plank was not secured, then theoretically it would have been wobbling or there would have been a problem with it. Matthew testified it never wobbled at all. But at some point it collapsed. So I think, and this is where I think it's a question that should be going to the jury on what caused that collapse. When you say it collapsed, do you mean the wood fracture? No, it just fell off the top level between the two. It fell off where it was positioned between the two, spanning the two ladders. Was there evidence that that plank had to be secured and how it had to be secured? Not at the summary judgment stage, but subsequently on my motion to reconsider, I did have the expert, Mr. Berg, who stated in his affidavit that it should have been secured. It actually should have been secured at a level down, lower than where it was placed. At the time of the motion for summary judgment, Judge Meyer commented that he saw no evidence of a safety violation, and hence he was going to grant the summary judgment. The plaintiff wasn't required to prove a safety violation. The plaintiff was required to prove that there was negligence in the setting up of that scaffold, which I think that I had evidence of that with respect to how the plank was positioned, that there was nothing securing it, that when you could see the ladders after the fall and the plank separate from the ladders, that that's different from the Strutz case where there was no evidence of anything being wrong with the stairs, and Mr. Strutz had medical problems that could have contributed or caused to the fall in the first place. And I think it's more similar to the cases of Housh and Olson and also Block. And in the Housh case, the plaintiff was found with part of an antenna wrapped around the plaintiff, which I think is more analogous to this case where the plaintiff fell and was there amidst the fallen ladders and the fallen plank, that clearly there was nothing securing that system together at all. Well, the wire was found around her, so obviously the fact that it was wrapped around her legs after she fell would make it clear that it had some positive connection to the fall, correct? I mean, I think that's – isn't it distinguishable on that basis? Well, I think that it's analogous in that you can see that there's a connection between that antenna and the fall, in this case between the plank and the ladders that had come undone and the fall. I'm certainly not saying that just because he fell there's negligence, but because there was an improper setup of that system that was supposed to hold Mr. Cook. But your expert testimony, that information from the expert really came in too late, did it not, to be considered? It wasn't considered at all. That's one of the issues you repealed. Correct. And I think that that should have been considered because at the time that we had the motion for summary judgment, there was no order entered, there was no scheduling conference that scheduled a timeframe for experts to be disclosed. We were taking the summary judgment at that point in time. At that point in time, I had a transcript from Mr. Gallos' deposition that he was the only person who set up the scaffold system, and we had the evidence that the plank was set without being secured on that top level, without being secured and being higher than it was supposed to be. The labels on the photographs that are evidence in the photographs that say, do not extend beyond this point and do not stand beyond this point were both violated in how this was set up. Well, let's break it down a little bit because I just don't want to let it hang in the air here. In your opening brief, you did not contest the trial court's decision to strike the affidavit, correct? No, I believe we did. The affidavit of Mr. Berg? Yes. You contested in your opening brief the trial court's decision to strike the affidavit? You did? Are you sure? Oh, I don't think I... In the opening brief? Well, I'm sorry. I did not... I was not appealing the decision to strike that affidavit, but my appeal is based upon that the reconsideration should have considered Mr. Berg's testimony. The issue with Mr. Berg's affidavit essentially summarized and restated the facts that we already knew with respect to... Well, let's break that down. I think arguably you forfeited that argument. If you didn't contest the trial court's decision to strike the affidavit in the opening brief, arguably you forfeited any objection to the court's motion, decision to grant the striking of the affidavit. But set that aside, you said something interesting. Well, there was no discovery cutoff date on expert testimony. But what does it have to do with the summary judgment motion? You knew the summary judgment motion was going to be argued, correct? Correct. That it hadn't been continued for that purpose? It had been continued not for the purpose of obtaining an expert, but for the purpose of obtaining Mr. Gallis' discovery deposition transcript in which he admitted that he set up the ladder system and that he was the only person to do that. Was there anything to prohibit you from attaching the expert's affidavit at the time that the argument for summary judgment was argued? I hadn't retained the expert at that point because I don't have to prove my case at the summary judgment point. As of that time, I had the evidence that Mr. Gallis had a duty to undertake the setting up of the scaffold system safely, and that he failed to do so because the plank wasn't attached and the plank was attached at too high a level. Well, how do we know the plank had to be attached without any expert testimony? I mean, that isn't self-evident, quite frankly. Well, and it seemed to me that it was self-evident, especially when the label on the ladder says don't go above this level and the plank was placed above that level. Well, that's different than being attached. I mean, those are two different things. Right, and my position is that the defendant failed to do both of those things. What do you think that your burden is to prevent summary judgment being entered against you when a motion for summary judgment is filed by a defendant questioning the sufficiency of proof? Well, with respect to the question of proof of the proximate cause part of that, that's supposed to be a question of fact for the jury, and I think there was sufficient circumstantial evidence to have that go to the jury with respect to what the cause point was. And that cause element, I think, is supported by the circumstantial evidence that he stood on the scaffold system and everything collapsed, and we knew enough at that point. All of the facts viewed in the light most favorable to my client would say that there was enough to get that to a jury to decide whether the plank was secured properly and whether the plank was too high. What is the magic language or words that is off-cited in case law relative to what the burden is? Do you know? Well, I think you're referring to when viewed in light most favorable to the non-moving parties. No, that's not it. That's what you're referring to. That's an evidentiary point. Okay. It's a presumption in favor of view. The burden the plaintiff has is to arguably present a crime of patient case or to arguably sustain a judgment in their favor or its favor or his or her favor. And so when you say things are supposed to go to the jury for questions of fact, they don't go to the jury if you haven't arguably established the validity of your cause of action. And you have presented us with what I believe to be an anthony, which means that you are giving us a syllogism that is based upon a premise that is presumed. And the premise that is presumed is that there could not have been an accident without negligence in fact. The problem with presuming that is you haven't established how the accident happened. So it's true that you are presuming this and therefore your syllogism is valid, even though it's an invalid exercise of a syllogism. But the problem is until you prove how it happened, you can't prove a breach. Now, I agree that you proved the duty, which is he has a reasonable or he has a duty to reasonably set up the ladder. But until we know how it failed, we don't know whether or not he did or he didn't because you cannot correlate it on an if-so-fact of accident. My impression at the time they were going to the motion for a summary judgment hearing was that I had presented sufficient evidence with respect to the plank not being attached and that Mr. Gallus had set up the ladder and that the ladder structure had failed. Real quick, in any event though, you did not have your expert's affidavit at the summary judgment motion hearing, correct? That's correct. So the gap that you filled in later, you're arguing, wasn't filled in when the judge ruled, was it? Well, I think it was because it just confirmed. Well, no, his testimony affidavit wasn't there. It couldn't have been. What the trial judge said was that he needed to see proof of a safety violation. Which is not what I think was required at the summary judgment stage. The plaintiff's not required to prove that point at the summary judgment stage. I had presented circumstantial evidence to support the plaintiff's case. Any other questions? No. Thank you. You'll have an opportunity to make rebuttal. Mr. Zajac. Good morning. Good morning. May it please the Court. Counsel. I have the pleasure and privilege of representing Mr. Gallos in this action. You mean the father-in-law of the plaintiff? Yes. Is the plaintiff still married to your client's daughter? Yes. The point I'd like to jump to right away that stands out most with me is the terminology that's been used in the subordinate court, and here again this morning, is about this equipment collapsing or failing somehow. I don't believe that's accurate, and I don't believe that's reflected in the record. I believe the record shows, as was mentioned before, nothing bent, nothing broke, no bolts and nuts came apart and separated and fell. Basically, you had two ladders with a piece of wood on it, and it tipped over somehow. And as Justice Zanoff mentioned, and as we mentioned in the brief, we're in this situation where we don't know if Mr. Cook just tipped it over himself before or on his way down to the ground below. Well, she points to one thing, and, you know, I mean, your argument has some appeal. She says clearly the plank wasn't attached to the ladder. That is true. So does that create some inference of negligence? No, because there's nothing in Judge Meyer's point itself, there's nothing saying it has to be. There was never anything offered at the summary judgment stage that says this is how you're supposed to do this or this is required or anything of the sort. There's no basis to say that is a breach of a duty. There's nothing to say that a homeowner who has asked his son-in-law to put some plaster and paint on a wall has an obligation to put the ladders together and clamp the piece of wood onto the ladder somehow. Well, maybe there is an existential fact that actually says that. There may be an OSHA regulation that says that, but it's not in the record. So whether to argue this is all hypothetical and speculation, because until you find out how the ladder came apart or how this individual fell and injured himself, this is all speculation. Right, and I think that's what Judge Meyer was getting at when he made that statement on the record about, well, if you had evidence of a safety violation. I think what Judge Meyer was really trying to say is if you could show me something to explain how this happened, not just in the hypothetical, not in the abstract, the safety violation, like the cases with the stairs, you know, the railings missing or there's an irregular differential or something, maybe that's true. It could all be true, but you have to link it all together. It's negligence as cause of damages that leads to a recovery by a plaintiff. Matthew, knowing that the ladder, I think he testified, or the plank was not attached to the ladder, didn't he testify he didn't notice any wobbling or any insecurity himself? Exactly. That was the other point. I made this rhetorical point in the brief. It's a situation where he has painted himself into a corner. When I went through with him in the depositions, just like a checklist, ruling out, well, the ladder didn't bend, the wood didn't break, nothing wobbled, nothing broke. I just went down the list of possibilities with him, and one by one he made the admission to me, no, this didn't happen, it didn't wobble, it didn't break, it didn't slip, nothing, the equipment didn't appear to be broken or bent or distorted in any way. And he basically, for the benefit of the defense, ruled each one of those potential things out. So we're really left with, well, what's the explanation? Why did this happen? And you have another admission. I deposed the emergency room doctor, that's attached in our brief, Dr. Parr. She's the one who was talking to him right after the accident when he was taken to Lutheran General, and his report to her, which is an admission, I lost my balance and fell. And it makes perfect sense. If we think about what he's doing, he's standing on a surface that's maybe 14 or 15 feet off the ground, and he's about 6 feet tall, so he can reach up and work on the plaster at the ceiling line in this two-story home as an open-space boyar. And he says, when this happens, he's looking up. So imagine what he's doing. He's standing on this plank, looking up like this, and he's so many feet off the ground, it makes perfect sense that he loses his balance and falls and tips this over. And that's really what he's left us with, because the theories about how this happened, maybe it came apart this way or maybe it fell for this reason, this is all hypothetical, this is all in the abstract. And there's really nothing for a jury to do. I mean, ordinarily, causation is a question for the jury. When you have competing sides, when you have competing testimony, but they don't have that here. They don't have an admissible source of information to give their competing version in front of the jury. Basically, in order to accomplish what the plaintiffs want to accomplish in order to recover here, they would have to ask the jury to speculate as to why this happened. There will never be an explanation. It's an unwitnessed fall, and no one has that objective, bystander's point of view to say this is how and why it happened. Did you ask the plaintiff if he had retrograde amnesia caused by the fall? I don't know that we ever got to it in terms of, are you having trouble remembering events prior or anything that has developed since the possible head injury to the point of the deposition where I asked him if he was having trouble in general recollecting. He didn't seem to give me that indication when I was asking him questions. He seemed to have a good chronology up to the point of the fall. I have another case called Alcorn v. Stepsidesty. The name Alcorn does sound familiar to me. The lady fell down a flight of stairs going down to the basement. She was injured. She had head injuries. She had retrograde amnesia. She couldn't remember anything about the fall or the location of the fall. And summary judgment was granted to the defendant, the person who owned the house in which she fell down the stairs. And the trial court granted judgment in part or major part because the woman couldn't testify how the accident happened. And since the configuration of the stairs were not something that were anything other than stairs, she couldn't prove a breach of duty because it's not a breach of duty to have stairs in a house. I was curious why you didn't cite it. In fact, it's a case about the lack of proof of causation. And without causation, you can't prove breach of duty. Right. I don't recall reading that one necessarily. The name Alcorn sounds familiar, but I don't recall coming across that one. But those are the other cases I cited. Generally, stairs are a big one. Stairs have, like ladders, they have inherent properties. And it's not negligent to have stairs or have a ladder. It's something that society deems useful. We need the stairs. They need to be this way for a reason. Ladders need to be this way for a reason. Well, ladders and a plank are a little bit different, though, aren't they? I mean, when Judge Meyer asked for some additional information and counsel was able to get the expert information, is there a reason that that shouldn't have been considered at the motion to reconsider? Absolutely. And what is that reason? Rule 191. We have a structure in place that says if you are going to oppose a motion for summary judgment, this is how you do it. The trial judge can't go around the loop twice. We can't have the trial judge get this package of information pursuant to Rule 191, rule, and then get a new package of information how many ever weeks or months later and say, okay, now do it all over again. Now, the report wasn't attached to that affidavit, though, was it even? The report wasn't attached to the expert's affidavit. The affidavit contained conclusions, information from the expert, but I don't believe it's attached to his report, did it? That's right. It was the affidavit and the report were two different things. The affidavit did not incorporate and include by reference. The report. Right. And that was one of the problems that we cited. But the first time around on the motion for summary judgment, Rule 191 and Section 1005 set it up so that the judge is given a preview. You say, look, judge, if the trial were held today, this is what the plaintiff would present. This is what the defense would present. Is that enough to go to a jury? We give the trial judge a quick peek at what the evidence is going to be so he or she can look at it and say, okay, there's something that the jury has to see and has to rule over or there is not. When the motion for summary judgment came up for argument before the trial judge, did counsel for the plaintiff say, hey, I need more time, I'm trying to do this or that and the other thing? There were time extensions, but not for experts. There were time extensions for the brief. It was originally extended. It was instead of 30 days to respond, I think it was 45 days to respond. And then there was some other step that came in in the meantime. So they had to get another extension, but nothing for the purpose of attaching a counter affidavit in response to the original motion for summary judgment. She never made that request at that time? No. And Judge Meyer even commented on that in the record. I think I cited the exact page where he said if I had been asked, I would have given that because I gave extensions for other reasons. And I never posed an objection to any extension. I never did anything other than follow the schedule that Judge Meyer gave us. The procedure, I mean, the substance and the procedure are two different issues here, but they're both dispositive. But the way this went down in terms of the summary judgment and the motion to reconsider, that alone is one item. If you don't even get to the merits of the summary judgment, if they're saying we need Mr. Berg's testimony in order to make a prima facie case, in order to show with reasonable certainty we're entitled to damages somehow, well, then they just, it was too late. It's a Johnny-come-lately witness, which does not allow them to fill in this gap that may have been mentioned or perceived. The issue before this court is basically three-part. We have to look at the record that was available to Judge Meyer at the time of the summary judgment, and that's a de novo review. So the entire record, as it was presented to him at the time, is reviewed for any basis to sustain his decision. Then we have to look at the motion to reconsider. What was the content of the motion to reconsider? And then you have to look at the part three, which is Mr. Berg's affidavit, the substance of his affidavit. Even if you say, you know, there should have been reconsideration and, you know, the affidavit should have been included in that rather than stricken, he still has problems. And as Justice Zanuff touched on, the report, the affidavit, they're not one presentation for Judge Meyer. And it is just fraught with legal conclusions, the worst one being that OSHA applies in this case. I think it's, if I'm remembering the exact wording of it, it's self-contradictory. It says OSHA doesn't apply, but it's the applicable standard. I mean, even if we're going to get into the substance of it, take the procedure out of it and look at that, they still don't have it. That's not, that's really not something that Mr. Berg would ever be able to say in the presence of the jury. And his other conclusions and the other things in there follow suit. So we have the issue of the procedure. I mean, procedurally, this did not go as it was supposed to go pursuant to the Civil Practice Act and pursuant to the Supreme Court rules. And then when we delve into the substance, the actual meat of the controversy, they still don't have it. It goes back to Kimbrough, that case from 1981. Kimbrough has this incredible staying power in the state of Illinois. It's been, tell us why you fell. Tell us how this happened without speculation or some random filling in blank spots in your memory or in the story. You can't win because all you're going to do is ask a jury to speculate, and we know that's completely improper. So before us, we have Judge Meyer looking at this saying, how did this man fall? Why did it happen? Show me a breach of a duty that caused him to fall. Put the two pieces together. Was the plank being higher on the ladder than was printed on the ladder? That was never addressed in the summary judgment. That was never briefed or argued in the summary judgment stage. It comes up in Mr. Berg's untimely and improper reporting and affidavit that he says it's over the top. But we still don't know why that is the cause of why this happened. It's higher than the manufacturer says it should be, if you take Mr. Berg's word for it. But how is that the cause of what happened? Mr. Cook still has no explanation. He doesn't say if I only been 18 inches lower than where I've been standing, I wouldn't have fallen. That's that's gross speculation, even if you were to say that. So I don't I don't think that I think this is one of those cases like the stairs being irregular or the handrail missing. Maybe that's true. Maybe it shouldn't have been like that. But you can't link that to the accident. Something has to put two and two together to get us to causation and damages. And the fact that he was standing on that ladder, which was not put together properly, isn't the link? No, it isn't, because we don't know that's why he fell. We don't know that there was any other than abstract problem with the ladder and the plank. You don't feel that's circumstantial evidence? No, because like the defective stairs where you have unequal risers or a missing handrail, they have to come up with something with reasonable certainty. It's it's every every appellate district has said you have to have reasonable certainty. You have to show why that issue is superior to all the other possibilities. Why does that one rise to the top? And they can't do that because, as was stated earlier, he could have just lost his balance and fall. Gravity brought him down because he lost his balance. That that hangs in equipoise. There's no real distinction between what could have happened in their theory and him losing his balance and falling. Any other questions? Thank you. Thank you. Miss Wakeman. I'd ask you to consider the case of Olson versus Williams, which is a 2012 case from this court. In that case, the plaintiff fell about 11 feet while investigating a fire alarm. The plaintiff could not recall the circumstances of the fall. Did there were no evidence along with the gate? Yes. But there was circumstantial evidence that I wrote. Yes. And I believe the same circumstantial evidence is present in this case. The plaintiff is not required to have an expert at the time of trial. It's a good idea to have a time of trial, but it's not a requirement. The plaintiff was not required to have an expert at the time of the motion for summary judgment. The plaintiff had circumstantial evidence to demonstrate the plank not being secured and the labels on the on the ladders. Mr. Berg's affidavit merely reiterated and then gave an official expert's position regarding what those circumstantial facts led to or what the conclusion was, which was that the negligence in setting up the scaffold caused Mr. Cook's fall. The specific statement by Judge Meyer that he needed to know there was a safety violation is also not what plaintiff was required to prove at the summary judgment stage. At the summary judgment stage, what Mr. Cook had to prove was there was circumstantial evidence to demonstrate that Mr. Gallus had improperly set up the scaffold and that that caused him to be injured. And I think that's exactly what was proven. I think I did prove that prima facie case through the circumstantial evidence at the time of the summary judgment. And then it should have gone to the jury with respect to the other issues, whether with respect to whether an expert was necessary or not. And especially when you look at what the expert said, the expert refers back to the same facts that I had noted about the photos of the ladders and the plank. Mr. Zajac said that there seemed to be some sort of contradiction or paradox wherein the statement was made that OSHA doesn't apply, but it's the standard. In this case, do you recall what he's referring to? I do recall that statement and that that was what Mr. Berg's affidavit was, was that was the closest level you could get to a safety violation within a home situation, which is part of why I didn't need an expert in the first place, because it doesn't apply to a home situation. This wasn't an employer-employee relationship. This wasn't an experienced contractor. This was a son-in-law repairing a ceiling for the father-in-law. Did the expert in his affidavit indicate how the accident happened? I don't recall how he... So he really wasn't... He wasn't an accident constructionist so much as he was a code relator. Right, and he also related other things besides the OSHA standards. He did refer to other codes and other guidelines in addition to OSHA. It wasn't... OSHA was one of the parts of his analysis, not the extent of it. It would be speculation for this panel to decide that Mr. Cook lost his balance and fell based upon a statement he gave when he was in extraordinary pain. He'd been in flight for life to the Lutheran General Hospital. He was medicated and he sustained a head injury. He didn't say anything different at his deposition, though, did he? What he said at the deposition was that everything collapsed. It fell out from under me. Everything collapsed. And he said that's why he fell? Yes. That everything collapsed and he fell, which is, I think, very comparable to Olson. That's a little bit different, isn't it? I know we're parsing words, but I think that's part of what we do at the appellate court. So everything fell... Everything collapsed and that's why I fell? And he fell, yes. I don't know that he said that's why I fell. Okay, well, the key word is why. But I don't think that when you're 20 feet up in the air that you're able to make that conclusion as a reasonable person. And that's why you have to look at the circumstantial evidence. That everything collapsed and everything collapsed according to my expert because the things weren't set up right. But even based upon the circumstantial evidence, everything collapsed because it wasn't set up right. Well, everything collapsed and then I fell? Or are we talking about simultaneously? Again, I come back to the question I asked earlier about did the collapse happen as a result of the fall? Or was it the reason for the fall? Well, his testimony and what he has been maintaining all along was that because of the collapse, he fell. How he phrased that, and I'd have to go back to the deposition to see the exact words, but what his message has been is that it fell, the system fell, and then he was injured and fell. Any other questions? Okay, thank you. We'll take the case under advisement. We have one other case on the call. We'll take a short recess.